IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| PEGGY N. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13-1278-T |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER AFFIRMING DECISION OF COMMISSIONER

Plaintiff has filed this action to obtain judicial review of Defendant Commissioner's final decision denying her applications for disability insurance benefits under Title II of the Social Security Act ("the Act") and for supplemental security income ("SSI") benefits based on disability under the Act. Plaintiff's applications were denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on April 19, 2012.

On June 11, 2012, the ALJ issued a decision, finding that Plaintiff was not entitled to benefits. The Appeals Council affirmed the ALJ's decision. This decision became the Commissioner's final decision. Plaintiff then filed this action, requesting reversal of the decision of the Commissioner. For the reasons set forth below, the decision of the Commissioner is AFFIRMED.

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Id. The court's review is limited to determining whether or not there is substantial evidence to support the Commissioner's decision, 42 U.S.C. § 405(g), and whether the correct legal standards were applied. See Lindsley v. Commissioner, 560 F.3d 601, 604–08 (6th Cir. 2009); Kyle v. Commissioner, 609 F.3d 847, 854 (6th Cir. 2010).

The Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly. See Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007). When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion. See Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001); Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986).

Plaintiff was fifty-four years old at the time of the ALJ's decision. R. 26. She has a general education degree, R. 131, and past relevant work as a housekeeper. R. 129. Plaintiff alleges that she became disabled in March 2002. R. 97

The ALJ enumerated the following findings: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset date; (2) Plaintiff has the following severe impairments: severe hypertension, major depressive disorder, panic disorder with

agoraphobia, and dependent personality disorder; but she does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (3) Plaintiff retains the residual functional capacity to perform medium work with no exposure to the public and only occasional collaborative work efforts with coworkers and supervisors in an environment with only occasional changes and no goal setting judgments; (4) Plaintiff is unable to perform her past relevant work; (5) Plaintiff was an individual closing approaching advanced age with a high school education on the alleged onset date; (6) transferability of job skills is not material to the determination of disability because Plaintiff's past work was unskilled; (7) using the Medical-Vocational Rules ("the grids") as a framework supports a finding that Plaintiff is not disabled whether or not she has transferable job skills; (8) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; (9) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.

The Social Security Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1). The claimant bears the ultimate burden of establishing an entitlement to benefits. Born v. Secretary, 923 F.2d 1168, 1173 (6th Cir. 1990). The initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden of going forward then shifts to the

Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Id.

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

> 1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2. An individual who does not have a severe impairment will not be found to be disabled.
>
> 3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.
>
> 4. An individual who can perform work that he has done in the past will not be found to be disabled.
>
> 5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(a)(4); Howard v. Commissioner, 276 F.3d 235, 238 (6th Cir. 2002). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a). Here, the sequential analysis proceeded to the fifth step with a finding that, although Plaintiff cannot perform her past relevant work, there is a substantial number of jobs that exist in the national economy that she can perform.

Plaintiff argues that substantial evidence does not support the ALJ's findings. She specifically complains that the ALJ did not give the proper weight to her treating and

4

consulting sources at Pathways, Inc., and did not correctly assess her residual functional capacity. Plaintiff's arguments are not persuasive.

In <u>Gayheart v. Commissioner</u>, 710 F.3d 365 (6th Cir. 2013), the Court of Appeals clarified and reiterated the standards for weighing medical opinions:

> These standards, set forth in administrative regulations, describe (1) the various types of evidence that the Commissioner will consider, 20 C.F.R. § 404.1512; (2) who can provide evidence to establish an impairment, 20 C.F.R. § 404.1513; and (3) how that evidence will be evaluated, 20 C.F.R. § 404.1520b. . . . Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c).
>
> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), <u>id.</u> § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"), <u>id.</u> § 404.1502, 404.1527(c)(2). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).
>
> The source of the opinion therefore dictates the process by which the Commissioner accords it weight. Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, id., as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, id. § 404.1527(c)(2)-(6).
>
> The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. <u>Id.</u> § 404.1527(c)(2). These reasons

> must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir.2004).

710 F.3d at 375-76.

A prerequisite for characterizing a source as a "treating source" is identifying an individual who is a physician, psychologist, or other acceptable medical source. An acceptable medical source can be one of the following: a licensed physician, licensed or certified psychologist; licensed optometrist, licensed podiatrist, or a qualified speech-language pathologist. See 20 C.F.R. §§ 404.1513, 416.913. Nowhere in the regulations is a hospital, clinic, or other institution such as Pathways, Inc., described as a treating source. See generally 20 C.F.R. §§ 404.1502, 416.902. However, the ALJ did, in fact, cite reports from Pathways, Inc., to support her findings.

Plaintiff was treated for mental disorders for numerous years and has been diagnosed with various impairments. A diagnosis does not necessarily establish the severity of a claimant's condition. See Young v. Secretary, 925 F.2d 146, 151 (6th Cir. 1990) (a claimant must do more to establish a disabling mental impairment than merely show the diagnosis of a dysthymic disorder). A finding of disability hinges on any attendant functional limitations that prevent the claimant from engaging in any work available in the national or regional economy. See 20 C.F.R. §§ 404.1520, 416.920; Griffith v. Commissioner, 217 Fed. App'x 425, 429 (6th Cir. 2007) ("A claimant's severe impairment may or may not affect his or her

functional capacity to do work. One does not necessarily establish the other.") (internal quotation marks omitted).

Plaintiff has been diagnosed with COPD and bronchitis, and examination notes document some limited supporting clinical findings of a respiratory pathology. The record however, does not document any persistent objective clinical findings or supporting diagnostic evidence of any chronic respiratory pathology. Likewise, the record does not document supporting diagnostic evidence or objective clinical findings of any chronic musculoskeletal pathology, nor does it document evidence of any significant corresponding medical treatment. R. 226-28, 229-52, 390-447, 452-59, 487-506, 626-50, 651-76, 677-95. Consequently, the record does not contain evidence of any impairment-related manifestations imposing functional limitation beyond those found by the ALJ.

The ALJ gave little weight to the mental health reports from consulting examiners Dr. Dennis Wilson and Dr. Stephen Rutledge. Both examiners reported marked limitations in various mental activities that would negatively impact her ability to engage in work-related activities. R. 258, 465. The ALJ, however, determined that these conclusions were not supported by the mental health treatment records from Pathways, Inc. Specifically, the ALJ noted that Plaintiff had a sporadic history of mental health treatment, as well as a failure to comply with her mental health treatment regimen. R. 756, 757. See Awad v. Secretary, 734 F.2d 288, 289-90 (6th Cir. 1984) (A claimant may be denied benefits for failing to follow prescribed treatment without good reason under the regulations 20 C.F.R. §§ 404.1530, 416.930); Flaten v. Secretary, 44 F.3d 1453, 1464 (9th Cir. 1995) (ALJ entitled to draw

adverse inference from general lack of medical care); Barrett v. Shalala, 38 F.3d 1019, 1023-24 (8th Cir. 1994) (claimant's minimal treatment inconsistent with claims of disabling pain).

The ALJ acknowledged that the mental health records documented some clinical findings, such as disorganized though content, as serious functional limitations. However, the record did not document evidence of any psychological decompensation or ongoing objective clinical findings of any marked functional limitations. R. 577-605, 696-733. Furthermore, January 2012 examination notes showed that Plaintiff's affect, mood, appearance, eye contact, behavior, orientation, thought processes, judgment, intellect, speech, motor activity, and reported sleep and appetite were within normal limits. R. 734-60.

Substantial evidence supports according little weight to the medical assessment portion of consulting examiner Dr. Robert Sanner's report. Dr. Sanner opined that Plaintiff could only lift or carry a maximum of ten pounds because of knee and shoulder pain. R. 265-66. However, his report does not include objective medical findings to support those limitations. R. 262-65. A claimant's subjective complaints are not a sufficient basis to support such a medical opinion. See 20 C.F.R. §§ 404.1527; 416.927.

The ALJ also found Dr. Sanner's restrictions internally inconsistent with the portion of his report describing his physical examination findings. Dr. Sanner's physical examination included generally normal findings. R. 262-65. Plaintiff was well-developed and in no apparent distress; she had normal muscle strength and range of motion as well as station, gait, and mobility; and she demonstrated sixty pound grip strength in her right hand and fifty

pound grip strength in her left hand. R. 262-65. Her ability to grasp and manipulate objects was normal, as was her ability to lift ten pounds while seated. R. 263. Dr. Sanner administered several neurological tests and reported normal results. R. 265. Given the foregoing, substantial evidence supported the ALJ's decision not to give portions of Dr. Sanner's report any weight.

In determining that Plaintiff could perform a reduced range of work, the ALJ found that her subjective complaints were not entirely credible. The ALJ must consider a claimant's subjective testimony if she finds evidence of an underlying medical condition and (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. See Duncan v. Secretary, 801 F.2d 847, 852 (6th Cir. 1986). When evaluating a claimant's subjective complaints, an ALJ must consider, in addition to objective medical evidence and Plaintiff's work record, any evidence relating to Plaintiff's daily activities; duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. See 20 C.F.R. §§ 404.1529, 416.929. Here, the ALJ considered Plaintiff's testimony, medical and opinion evidence, and inconsistencies between her allegations and the evidence contained in the record and found that Plaintiff's complaints were not entirely credible.

Plaintiff's activities of daily living also diminished the credibility of her subjective complaints. Plaintiff reported that she visited with family members, prepared elaborate meals,

washed dishes and did other household chores, shopped for necessities, and occasionally attended church. R. 14. See Vance v. Commissioner, 260 F. App'x 801, 805 (6th Cir. 2008) (affirming ALJ's finding that claimant's activities of daily living —including cooking, doing dishes, driving, and shopping—were inconsistent with the level of pain and fatigue she alleged). As pointed out by the ALJ,

> It is worth noting that the claimant's primary allegation is that she is mentally disabled, yet Social Security Administration Field Office personnel reported she did not have difficult hearing, reading, breathing, understanding, coherency, concentrating, talking or answering during a telephone interview conducted in September 2010.

R. 14-15 (citation omitted).

It is the ALJ's responsibility to determine residual functional capacity based on all the relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own description of her limitations. See Anderson v. Shalala, 51 F.3d 777 (8th Cir. 1995); 20 C.F.R. §§ 416.945(a) & 416.946. Here, the ALJ considered all of the evidence in the record and adequately explained the basis for her residual functional capacity finding. As the ALJ's residual functional capacity was within the "zone of choice" supported by substantial evidence, her finding is upheld. See Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

When a claimant's vocational characteristics coincide with the factors of a rule in the grids, the existence of jobs in the national economy is established, and the claimant is considered not disabled. See 20 C.F.R. §§ 404.1569, 404.1569a(b), 416.969, 416.969a(b); 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(b); Heckler v. Campbell, 461 U.S. 458, 461-62,

470 (1983); Kimbrough v. Secretary, 801 F.2d 794, 796 (6th Cir. 1986). If the grids cannot be used to direct a finding of disabled or not disabled because of the claimant's nonexertional limitations, they may be used as a framework for the decision-making process. See 20 C.F.R. §§ 404.1569, 404.1569a(d), 416.969, 416.969a(d); 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2).

The Commissioner met her burden at step five by eliciting the testimony of a vocational expert. The ALJ's hypothetical questions included all relevant vocational information that pertained to Plaintiff, including the limitations that the ALJ found in his assessment of Plaintiff's residual functional capacity. R. 16, 42. The vocational expert identified examples of unskilled jobs that an individual with Plaintiff's vocational characteristics could perform, which the ALJ included in his decision. R. 42. Because the vocational expert's testimony was in response to hypothetical questions that set forth all the reasonable limitations Plaintiff had on her ability to work, the ALJ properly relied on that testimony. See 20 C.F.R. §§ 404.1529, 416.929; Smith v. Halter, 307 F.3d 377, 378 (6th Cir. 2001) (A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.) Based on vocational expert testimony, the ALJ found Plaintiff could perform various jobs within the medium level of work activity such as conveyor off-bearer, dryer attendant, and box bender.

Because there is substantial evidence in the record supporting the Commissioner's decision denying Plaintiff's application for benefits, the decision of the Commissioner is AFFIRMED. The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE